We move to the second case this morning, Quantaway Adams v. United States. Mr. Henderson. Good morning. May it please the Court. I'm Peter Henderson. I represent Quantaway Adams. This is a procedural appeal. There's a sort of interesting categorical approach issue, but it really is about the denial of the Rule 60B motion and whether the district court erred in denying that motion. There are two... Why should it matter? It doesn't matter at all that Mr. Adams was convicted under a second amended information and not the initial complaint if the two alleged identical violations are using identical language. Because it's the government's burden to prove which subsection of an overly broad statute the defendant was actually convicted of. And so if there had been a challenge, the government would have needed to produce the appropriate pleading to prove that. And if they did not produce an appropriate pleading, then that proof would have failed. Weren't they identical? They were identical. And so the question really is, then, if an objection had been made, would the government have produced the second amended information? Because if it hadn't, then there could be no reliance on a charging document that didn't form the basis of the actual conviction. Now, the government says it would have produced that, and that's a question of fact that the district court never resolved. But all along throughout this litigation, they've maintained, no, the felony complaint is the appropriate Shepard document. That's where you look to see what he was convicted of, and that's an error. So there's a requirement that the government actually prove through Shepard documents which portion of this over broad statute the defendant was actually convicted of. And producing a felony complaint that was not the basis of the actual conviction wouldn't suffice. Why don't you talk about that? I mean, the language was identical, so why don't you talk about the categorical issue? And when you have intent, and then you had the offer, why isn't that enough? Most circuits have said yes, that is enough. Because for an attempt, you need both an intent plus an overt act. And what the California courts have said is that an offer to sell does not involve that overt act. That an offer to sell is solicitation, it's not attempt. And they've made very clear that there's a difference between the two. But don't they require intent as well? Yes, they require intent. An intent to sell in order to prove that there was an offer to sell. But what it doesn't require, the California court, is an actual overt act. Yeah, but the question is whether under federal law, that offer to sell would be attempt, right? Would be that extra overt act. And under federal law, the answer would be yes. So in that respect, it doesn't matter what California law says. Because the question here is whether under federal law that would qualify. I don't think that's true. So the government has cited a couple cases that have involved this intent to sell. And so, for example, in the 8th Circuit, the 28-J letter the government filed, what the 8th Circuit did was it looked to Missouri law to see whether Missouri requires, as an attempt, this sort of overt act in addition to the intent to sell. And so the cases are citing state law. Now, for example, the 6th Circuit, what the 6th Circuit does in Evans is basically do what Your Honor just suggested, which is to say, well, we can assume that an attempt, sure, it involves the intent and it involves an overt act. And we're satisfied that Ohio, that this type of activity would always involve an overt act. But when you have state law that specifically says no overt act is required, I think the federal court should take that into consideration. Because that's the state saying, look, we have a lower bar for what constitutes an offer to sell. There doesn't have to be any sort of substantial step or overt act in furtherance of this intent to sell. But the general federal, as Brett pointed out, is that offering to sell cocaine based is a controlled substance offense. No, I don't think that's true. I think it depends on what... Martinez didn't say that? I'm sorry, which case? Martinez. So Martinez-Lopez out of the 9th Circuit, if that's the case you're referring to, that has to do with whether this California statute is divisible or not. And the 9th Circuit said it did, it was. But as to the particular... The reason why it was an issue is because the 9th Circuit identified that the statute's overbroad because it includes offers to sell. The implication being that, sure, selling is a controlled substance offense, but offers to sell are not. And, of course, we went over in our reply brief, you know, there's some discordant voices on the 9th Circuit about this particular statute. Martinez-Lopez wasn't exactly on point for your issue. Well, but the whole premise of Martinez-Lopez, the reason it came up was because it was overly broad, because it involved offers to sell. If it weren't overly broad, there's no need to get into whether it's divisible. You know, if everything is qualified. Perhaps we have, you know, perhaps we have an error of a technical nature, but not an error that would have had any practical effect on anything. You know, you cited the Hicks as precedent, that reliance on the wrong charging document is reversible error. But in Hicks, the document on which the court relied contained materially different charges than the charging document. Again, in this case, they are identical. No, that's certainly true. And so there are several layers to this appeal. You know, obviously, we have to establish ineffective assistance of counsel. And so that is our first focus. And whether an objection should have been lodged, whether that caused prejudice, that's one question. There's also the merits question on whether this statute, in fact, is a controlled substance offense. So even if that is just a technical sort of nature question, there is the real question of whether he should have been a career offender in the first place. By the way, is the attorney abandonment claim a new claim that you have brought? No. Was it raised in the 2255 proceedings? No. And I think it may be helpful to But the abandonment occurred before the 2255 motion. That's right. So maybe it's helpful to sort of go over the equities in this case and the procedural history to show why this Rule 60B motion, as a procedural matter, should have been granted. And I want to make sure the Court knows that's the remedy we're seeking on this appeal. We're not asking for a resentencing at this point. And you do understand, I am certain, that the granting of a 60B6 motion is a rare event reserved only for the most extreme injustices that cannot be rectified otherwise. Right. So we have a Rule 60B motion, and it was denied by the District Court on the grounds that it was excessive 2255. And that's not true. Now, whether the 60B motion should have been granted or not, I want to sort of separate out the procedure. As a procedural matter, in the first Rule 60B motion, which is the only one we've addressed in this appeal, Mr. Adams said, there is a defect in the integrity of these proceedings. I allege that my counsel was ineffective, and you used, pursuant to the law of the case doctrine, the fruits of his ineffectiveness to throw out my claim. So that's not a successive 2255. It's a bona fide Rule 60B motion. Now, whether it should be granted, then we have to look at the equitable considerations. But, counsel, I mean, I have two questions for you with respect to that. I mean, the District Court didn't mention law of the case, and it seemed to me that the District Court was expressing its agreement with what the Seventh Circuit had said on his first appeal about the issue. So it's not clear that that's what the District Court did. But even so, this is distinguishable from Ramirez, because Ramirez could say that it affected the integrity of the first 2255 proceeding because the ineffective assistance occurred within that proceeding, as opposed to, in this case, where the 60B motion looks like an attempt to circumvent EDPA because he could have raised the abandonment claim in the first 2255 because it happened in the direct appeal, not the 2255. Right. So there are a lot of issues. There is no abandonment claim. I want to make sure that's clear. The fact that he was abandoned after his second appeal, which is when this court in dicta said, besides this is attempted distribution, meant that he could not correct that error. That's not a claim that he's entitled to 2255 relief. It is an equity, though, to show that he's been diligent or he can't be faulted for a lack of diligence in pursuing his remedies. So when he gets to the 2255, his claim is, I had ineffective assistance of trial counsel for failing to object to this. It led to the rest of the procedure where it was waived. The issue was waived. It could never be brought up again. And so in the 2255, then, when he presents this to the court, I agree that a very technical reading of the court's opinion is, I agree with the Seventh Circuit. This is meritless. So they can't be ineffective. But a block quotation from this court with, I agree, I think is the functional equivalent of relying on the law of the case. And that's a defect. Now, in Ramirez, the reason why the court excused the procedural default, basically he didn't appeal, I think, the denial of the 2255, was that his counsel at that point abandoned him. But he was represented by counsel throughout the 2255. And what the Supreme Court has said in Martinez and Trevino is that when you receive ineffective assistance of counsel on a 2255, on your initial collateral attack, or you are pro se, then the court, in the context of this, should excuse procedural default. Because when the issue goes back to ineffective assistance of counsel, the first opportunity to raise this in federal court is on a 2255. And we're not going to hold pro se prisoners to the heightened standard that we would hold competent counsel. So we're going to excuse procedural default by pro se prisoners, along with prisoners who are represented by counsel. But the district court didn't say that his ineffectiveness claim was procedurally defaulted, right? In the first 2255, it just said that he lost because it wasn't ineffective to not raise this issue, correct? Right, and we think that is a loss on a procedural issue. We call that law of the case. If the court disagrees with that and says that's the merits, then I think probably his Rule 60B motion should be denied. That's not to say it's not a proper Rule 60B motion. It is asserting, look, you denied my motion on a procedural defect that infected the proceedings. But the court could say, no, I didn't, denied, not because it's a success of 2255. But what the court would have to do in that, in denying the Rule 60B motion, is consider all of the equities. It's an equitable motion, and there are a number of considerations, including his counsel abandoned him after the second appeal. He's proceeding pro se. The merits of the claim may be different because they weren't squarely presented to this court. All of those equitable considerations would go into that. The district court here didn't engage in any of that weighing in terms of the equitable considerations. So that's why our suggested remedy is that we return this to the court, reverse the denial of the Rule 60B motion, and return to the district court for further proceedings. So I'll save the little time I have left. All right, thank you. Thank you, Mr. Henderson. Mr. Wiseman? May it please the court? My name is Derek Wiseman, and I am here today on behalf of the United States of America. This court should affirm the district court's decision below for three independently sufficient reasons. First, because the district court lacked jurisdiction over Mr. Adams' unauthorized successive habeas petition. Second, because even if the district court had jurisdiction over Mr. Adams' Rule 60B motion in this case, Mr. Adams has still today failed to make the required showing of extraordinary circumstances under Rule 60B. And third, even if extraordinary circumstances did exist, Mr. Adams has also failed to demonstrate ineffective assistance of counsel because he does qualify as a career offender. This court should affirm the district court's decision for each of these three independent reasons. But starting with the threshold barrier to Mr. Adams' argument in this case. He brought a motion in the district court below under Federal Rule of Civil Procedure 60B, but that motion was in actuality an unauthorized successive habeas petition that the district court had no jurisdiction to decide. This conclusion is based on a simple application of the Supreme Court's holding in Gonzales against Crosby. That court held that Rule 60B motions, like the motion filed in this case, are actually unauthorized successive habeas petitions when they attack a district court's denial of a habeas claim on the merits. And the key inquiry here, in this case on this issue, according to the Supreme Court's decision at page 532, is whether Mr. Adams' motion in this case attacks the district court's holding on the merits or whether the motion instead attacks a procedural barrier that, quote, precluded a merits determination, end quote. At what point in all of these various proceedings did the government become aware that the district court should have been looking at the California second amended information rather than the complaint? Your Honor, it was during this appeal. That's when I took over this case from an assistant U.S. attorney who was ill. And at that point, we discovered that there was a second amended information based on the appellate brief in this case. We looked for that, found it, and then immediately made the court aware of that document, Your Honor. And suppose the complaint and the second amended information had charged very different conduct, but all else was the same in the case. Would Adams be entitled to raise his D6 claim? Your Honor, there may have been a defect in the proceedings if that were true, Your Honor, if there were materially different charging language and that all the parties were unaware of that language. That may have been the defect in the proceedings that the Supreme Court spoke about in Gonzales against Crosby. That may very well have been the case, but that certainly was not the case in this case. As the court mentioned and as Mr. Adams' counsel conceded here today, the charging language is identical in this case. So however this charging language is applied, it's applied in the same way. Counsel, would it be a defect in the proceedings or procedural error if, as Mr. Adams claims, the court did rely on law of the case? No, Your Honor, it would not. And the reason why is because the Supreme Court made clear that it either falls into two buckets, the challenges in Rule 60B. Either you're attacking a merits determination or a procedural barrier that, quote, precluded a merits determination. And Mr. Adams cannot show in this case that the district court was precluded from reaching the merits of the ineffective assistance of counsel claim even if the law of the case doctrine were used, which, as Your Honor made clear, it's unclear that it was. There's no express indication. Because the district court in this case, the record makes abundantly clear, reached the merits of the ineffectiveness claim and actually decided those. In rejecting Mr. Adams' ineffective assistance of counsel claim in this case, the district court expressly held at page 25 in document 20 below that Mr. Adams' previous attorneys, quote, were not ineffective, end quote. Therefore, the court reached the merits of this ineffectiveness claim. And as Mr. Adams' counsel made clear once again today, the real complaint in this case is with whether, is not with whether the district court reached the merits, it's with how the district court decided the merits. And that's really the fundamental flaw in the argument regarding the alleged use of the law of the case doctrine. It proves too much. Mr. Adams can't show that the district court was precluded from reaching the merits, so he argues instead that the district court improperly used the law of the case doctrine to decide the merits. But that argument doesn't meet the standard laid out by the Supreme Court in Gonzales. The Supreme Court made clear that if a habeas petitioner, like Mr. Adams, wants to attack how a district court decided the merits, then that's what appeals are for. It's not the proper use of a Rule 60b motion. And the Rule 60b motion in this case is the exact type of an argument, an attack on a merits determination, that the Supreme Court did prohibit in Gonzales against Crosby. This was an unauthorized success of habeas petition, and this court should affirm for that reason alone. But even if this were a proper Rule 60b motion, even if the district court did have jurisdiction to decide it, then Mr. Adams' appeal should still be rejected and the district court's opinion should still be affirmed because he has not made the required showing of extraordinary circumstances under Rule 60b. The Supreme Court made clear once again in Gonzales against Crosby that Rule 60b requires a showing of extraordinary circumstances just to find the reopening of a final judgment. Mr. Adams has not made that showing in this case. In his only attempt to show extraordinary circumstances, he makes an unsworn and unsupported allegation of attorney abandonment that his appellate counsel abandoned him on direct appeal. But that fails for a number of reasons. For one, an unsworn, unsupported, and ultimately untimely allegation such as this cannot meet this requirement. And on top of that, as this court alluded to earlier, Mr. Adams had an opportunity to raise this abandonment claim in his original Section 2255 motion. His failure to raise the attorney abandonment claim when it should have been brought, that's not an extraordinary circumstance. And that's part of the reason, as this court alluded to as well, why this attorney abandonment allegation in this case is materially different than the abandonment that occurred in Ramirez v. United States. In that case, this court held that the attorney abandonment during the habeas proceedings caused a procedural default, caused the habeas petitioner there to procedurally default on his habeas claim. And to completely lose out on the ability to pursue that claim, that was an extraordinary circumstance. But that's not at all what happened here. Even if Mr. Adams' allegations of attorney abandonment were true, which there's no evidence to support other than an unsworn allegation, but even if they were, he still had the opportunity to pursue his habeas claim in this case. He brought that claim and received a merits determination, albeit an adverse one, but a merits determination nonetheless on that claim. Therefore, there are no extraordinary circumstances in this case, and this court could affirm for that reason alone as well. But even if there were, Mr. Adams' claim also fails on the merits. That's because he does qualify as a queer offender, and he therefore received constitutionally effective representation. To decide this question on this issue, which is the central question, is whether Mr. Adams' prior drug conviction qualifies as a controlled substance offense, under the federal sentencing guidelines, this court must apply the categorical approach. And that approach requires, in this case, it raises an inquiry, which is the key inquiry here, which is whether California's offer to sell narcotics crime is broader, covers a broader swath of conduct, than the controlled substance offense definition in Section 4B1.2. No court has ever held that. In fact, the only courts to decide this specific issue have held the exact opposite, that California's offer to sell narcotics crime is a controlled substance offense. And on top of that, as this court alluded to earlier, courts across the country have held that similar state crimes prohibiting offers to sell narcotics are controlled substance offenses qualifying as attempted distributions under Section 4B1.2 when they require an intent to sell narcotics. Those courts have found that an attempted distribution under Section 4B1.2 requires two elements. One, an intent to distribute narcotics, and two, a substantial step in the distribution of those narcotics. Those courts also found that the relevant state crimes prohibiting offers to sell narcotics also require two elements. One, an intent to distribute narcotics, and two, the offer to sell those narcotics. Every circuit court to consider a state statute prohibiting offers to sell narcotics with these two elements has found that it qualifies as a controlled substance offense. Those are the First Circuit's holding in United States v. Bryant, the Third Circuit's holding in United States v. Santana, the Sixth Circuit's holding in United States v. Evans, and the Eighth Circuit's recent holding in United States v. Thomas. The California crime at issue in today's case, the offer to sell narcotics crime, requires those same two elements, an intent to distribute and an offer to sell those narcotics. Because they match the federal definition of an attempted distribution, this crime is a controlled substance offense. And that is true regardless, as this court alluded to earlier, of whatever label the California courts may have placed on this crime. Mr. Adams argued today, and in his reply brief, that the California state court decision in People v. Brown is controlling in this case because, according to Mr. Adams, that case arguably said that California's offer to sell narcotics crime is different than an attempt under state law. But whether or not California courts label this crime as an attempt under state law is ultimately irrelevant to whether this crime qualifies as an attempted distribution under the federal sentencing guidelines. The categorical approach in this case, and in every case, requires a strict comparison between the state statutory elements on one hand, in this case California's offer to sell narcotics, and on the other hand the federal definition, in this case attempted distribution. Because those elements match, this crime is a controlled substance offense, and Mr. Adams does qualify as a clear offender. Therefore, this court should affirm for that reason alone. And for that reason, Your Honors, and for all other reasons mentioned today, we respectfully request that this court affirm the district court's decision below. Thank you, Your Honors. Thank you, Counsel. Mr. Anderson? Thank you. I think the government's just sort of made my point on really the threshold issue in this case, which is about jurisdiction, and whether the district court's order, the judgment that's under review, was erroneous. And if it was, the district court had jurisdiction to hear a complaint about the defect in a proceeding. And so, as my friend said, if this complaint were about the difference between two complaints, or that the government didn't provide the right charging document and it was different, then the district court would have jurisdiction. Jurisdiction can't depend upon whether the alleged error is actually an error or not. The allegation itself, its truth, does not create jurisdiction. The question is whether Mr. Adams initiated an attack on a defect in the integrity of this habeas proceeding, and that's what his motion said. So the district court should have considered the motion. The second two issues that the government talks about, we've only discussed them on appeal. The district court never got to them in the district court because it never thought it had jurisdiction, and that was erroneous. This is an attack on the defect of the integrity. So we think the court should reverse that error and allow the district court to make the equitable findings and to look at these issues in the first instance. Thank you. Thank you, Mr. Henderson. Thanks to both counsel, and the case will be taken under advisement. We'll move to the third case this morning.